Sara L. Bloom
Law Office of Sara Bloom
1120 Huffman Rd. Ste 24-785
Anchorage, AK 99515
t(907) 519-3613
f(907) 345-8570
*sara@907lawyer.com*
Attorney for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

AT ANCHORAGE

| | |
|---|---|
| CODY SIEGMANN, | |
| *On behalf of himself and those similarly situated*, | Case No. |
| Plaintiffs, | Judge |
| v. | Magistrate Judge |
| M.A.C. PIZZA COMPANY, LLC, BRYAN DOBB, JOHN DOE CORP. 1-10, JOHN DOE INDIVIDUAL 1-10, | Jury Demand Requested |
| Defendants. | |

---

## CLASS AND COLLECTIVE ACTION COMPLAINT

---

1.      Cody Siegmann, on behalf of himself and all similarly situated individuals, brings this action against Defendants M.A.C. Pizza Company, LLC, Bryan Dobb, John Doe Corp. 1-10; John Doe Individual 1-10. Plaintiff seeks appropriate monetary,

declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiff and similarly-situated individuals with minimum wages as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., Alaska Wage and Hour Act, and applicable Alaska law.

2.  Defendants operate Domino's Pizza franchises in Alaska and Canada ("Defendants' Domino's stores").

3.  Plaintiff seeks to represent the delivery drivers who have worked at the Defendants' Domino's stores.

4.  Defendants repeatedly and willfully violated the Fair Labor Standards Act and Alaska Wage and Hour Act by failing to adequately reimburse delivery drivers for their delivery-related expenses, thereby failing to pay delivery drivers the legally mandated minimum wage wages for all hours worked.

5.  All delivery drivers at the Defendants' Domino's stores, including Plaintiff, have been subject to the same or similar employment policies and practices.

## Jurisdiction and Venue

6.  Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's FLSA claims.

7.  Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's Alaska law claims.

8.  Venue in this Court is proper under 28 U.S.C. § 1391(b) because Defendants' principal place of business is located at 601 W. 36th Ave., Anchorage, AK 99503.

**Parties**

**Plaintiff**

**Cody Siegmann**

9.      Plaintiff Cody Siegmann is a resident of Wasilla, Alaska.

10.      Plaintiff was an "employee" of all Defendants as defined in the FLSA and the Alaska Wage and Hour Act AS § 23.10.145 that incorporates the FLSA definition.

11.      Plaintiff has given written consent to join this action.

**Defendants**

**M.A.C. Pizza Company, LLC**

12.      Defendant M.A.C. Pizza Company, LLC is a limited liability company authorized to do business under the laws of Alaska.

13.      M.A.C. Pizza Company, LLC is the corporate entity that appears on Plaintiff's paystubs for the work he completed for Defendants.

14.      M.A.C. Pizza Company, LLC is an entity that operates the Defendants' Domino's stores.

15.      Upon information and belief, M.A.C. Pizza Company, LLC owns four Domino's stores in Alaska.

16.      M.A.C. Pizza Company, LLC has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

17. M.A.C. Pizza Company, LLC has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

18. At all relevant times, M.A.C. Pizza Company, LLC maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

19. M.A.C. Pizza Company, LLC is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA and Alaska Wage and Hour Act AS § 23.10.145.

20. At all relevant times, M.A.C. Pizza Company, LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

21. M.A.C. Pizza Company, LLC's gross revenue exceeds $500,000 per year.

**Bryan Dobb**

22. Defendant Bryan Dobb is an owner and operator of M.A.C. Pizza Company, LLC and the Defendants' Domino's stores.

23. Bryan Dobb is individually liable to Defendants' Domino's delivery drivers under the definitions of "employer" set forth in the FLSA and Alaska Wage and Hour Act AS § 23.10.145 because he owns and operates the Defendants' Domino's stores, serves as a manager and/or member of M.A.C. Pizza Company, LLC ultimately controls significant

aspects of Defendants' Domino's stores' day-to-day functions, and ultimately controls compensation and reimbursement of employees. 29 U.S.C. § 203(d).

24. At all relevant times, by virtue of his role as owner and operator of M.A.C. Pizza Company, LLC, Bryan Dobb has had financial control over the operations at each of the Defendants' Domino's stores.

25. At all relevant times, by virtue of his role as owner and operator of M.A.C. Pizza Company, LLC, Bryan Dobb has a role in significant aspects of the Defendants' Domino's stores' day to day operations.

26. At all relevant times, by virtue of his role as owner and operator of M.A.C. Pizza Company, LLC, Bryan Dobb has had control over the Defendants' Domino's stores' pay policies.

27. At all relevant times, by virtue of his role as owner and operator of M.A.C. Pizza Company, LLC, Bryan Dobb has had power over personnel and payroll decisions at the Defendants' Domino's stores, including but not limited to influence of delivery driver pay.

28. At all relevant times, by virtue of his role as owner and operator of M.A.C. Pizza Company, LLC, Bryan Dobb has had the power to hire, fire, and discipline employees, including delivery drivers at the Defendants' Domino's stores.

29. At all relevant times, by virtue of his role as owner and operator of M.A.C. Pizza Company, LLC, Bryan Dobb has had the power to stop any illegal pay practices that harmed delivery drivers at the Defendants' Domino's stores.

30.     At all relevant times, by virtue of his role as owner and operator of M.A.C. Pizza Company, LLC, Bryan Dobb has had the power to transfer the assets and liabilities of Defendants' Domino's stores.

31.     At all relevant times, by virtue of his role as owner and operator of M.A.C. Pizza Company, LLC, Bryan Dobb has had the power to declare bankruptcy on behalf of Defendants' Domino's stores.

32.     At all relevant times, by virtue of his role as owner and operator of M.A.C. Pizza Company, LLC, Bryan Dobb has had the power to enter into contracts on behalf of each of the Defendants' Domino's stores.

33.     At all relevant times, by virtue of his role as owner and operator of M.A.C. Pizza Company, LLC, Bryan Dobb has had the power to close, shut down, and/or sell each of the Defendants' Domino's stores.

34.     At all relevant times, by virtue of his role as owner and operator of M.A.C. Pizza Company, LLC, Bryan Dobb had authority over the overall direction of each of Defendants' Domino's stores and was ultimately responsible for their operations.

35.     The Defendants' Domino's stores function for Bryan Dobb's profit.

36.     Bryan Dobb has influence over how the Defendants' Domino's stores can run more profitably and efficiently.

**Doe Corporation 1-10**

37.     Upon information and belief, Defendants own, operate, and control other entities and/or limited liability companies that also comprise part of the Defendants'

Domino's stores, and qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Domino's stores as that term is defined by the FLSA and Alaska Wage and Hour Act AS § 23.10.145.

38.     Upon information and belief, Bryan Dobb owns and/or operates, in whole or in part, a number of other entities that make up part of the Defendants' Domino's operation.

39.     Upon information and belief, the franchisor, Domino's Pizza, may also be liable as an employer of the delivery drivers employed at Defendants' Domino's stores.

40.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**John Doe 1-10**

41.     Upon information and belief, there are additional individuals who also qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Domino's stores as that term is defined by the FLSA and Alaska Wage and Hour Act AS § 23.10.145.

42.     Upon information and belief, Bryan Dobb has entered into co-owner relationships with a number of his managers and business partners, and those individuals might also qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Domino's stores as that term is defined by the FLSA and Alaska Wage and Hour Act AS § 23.10.145.

43.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

## Facts
## Class-wide Factual Allegations

44.     During the relevant time period, Defendants have operated approximately 4 Defendants' Domino's stores.

45.     The primary function of the Defendants' Domino's stores is to sell pizza and other food items to customers, whether they carry out or have their food delivered.

46.     Some or all of the Defendants' Domino's stores employ delivery drivers.

47.     Plaintiff and the similarly situated persons that Plaintiff seeks to represent are current and former delivery drivers employed by Defendants at the Defendants' Domino's stores.

48.     All delivery drivers employed at the Defendants' Domino's stores over the last three years have had essentially the same job duties—deliver pizza and other food items to customers.

49.     When there are no deliveries to make, Defendants' delivery drivers are required to work inside the Defendants' Domino's stores building pizza boxes, cleaning, preparing pizza and other food items, and completing other duties inside the restaurant as necessary.

50.     At all relevant times, Plaintiff and similarly situated delivery drivers have been paid minimum wage for all hours worked.

51.     Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

52.    Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing charges, interest charges, registration costs, cell phone costs, GPS charges, and other equipment necessary for delivery drivers to complete their job duties.

53.    Pursuant to such requirements, Plaintiff and other similarly situated employees purchase gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, financing charges, and incur cell phone and data charges all for the primary benefit of Defendants.

54.    Plaintiff and the Defendants' Domino's delivery drivers were reimbursed a set amount per delivery they completed for Defendants. For example, Plaintiff is reimbursed $1.50 per delivery.

55.    Defendants' reimbursement payments had no connection to the actual expenses incurred by the delivery drivers.

56.    The Defendants' Domino's stores do not track or record the delivery drivers' actual expenses

57.    The Defendants' Domino's stores do not collect receipts from their delivery drivers related to the expenses they incur while completing deliveries.

58.    The Defendants' Domino's stores do not reimburse their delivery drivers for the actual expenses delivery drivers incur.

59.     The Defendants' Domino's stores do not reimburse their delivery drivers at the IRS standard business mileage rate.

60.     The Defendants' Domino's stores do not reasonably approximate the delivery drivers' expenses.

61.     The Defendants' Domino's stores' reimbursement payments result in reimbursements that are less than the IRS standard business mileage rate for each mile driven.

62.     According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods has been:

   a.  2016: 54 cents/mile
   b.  2017: 53.5 cents/mile
   c.  2018: 54.5 cents/mile
   d.  2019: 58 cents/mile
   e.  2020: 57.5 cents/mile

63.     The delivery drivers at Defendants' Domino's stores have incurred even more in expenses than those contemplated by the IRS standard business mileage rate— *e.g*., cell phone and data charges.

64.     As a result of the automobile and other job-related expenses incurred by Plaintiff and other similarly situated delivery drivers, they were deprived of minimum wages guaranteed to them by the FLSA and Alaska law.

65.     At all relevant times, Defendants have applied the same pay policies, practices, and procedures to all delivery drivers at the Defendants' Domino's stores.

66.     All of Defendants' delivery drivers had similar experiences to that of Plaintiff. They completed similar job duties; were subject to the same reimbursement policy; received similar reimbursement payments; incurred similar automobile expenses; completed deliveries of similar distances and at similar frequencies; and were paid at or near the applicable minimum wage rate before deducting unreimbursed vehicle costs.

67.     Regardless of the precise amount of the reimbursement formula at any given point in time, Defendants' reimbursement formula has resulted in an unreasonable underestimation of delivery drivers' automobile expenses throughout the recovery period, causing systematic violations of the minimum wage laws.

68.     Because Defendants paid their drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations. *See* 29 C.F.R. § 531.35.

69.     Defendants have willfully failed to pay federal and Alaska state minimum wage to Plaintiff and similarly situated delivery drivers at the Defendants' Domino's stores.

**Plaintiff's Individual Factual Allegations**

70.     Plaintiff worked at a Defendants' Domino's store from July 2018 to September 2019 at the Wasilla, Alaska location.

71.     Plaintiff was subject to the same or substantially similar compensation terms as other drivers for the Defendants' Domino's stores.

72.     Plaintiff worked dual jobs.

73.     Plaintiff's inside duties were not related to his delivery duties.

74.     Throughout the relevant time period, Plaintiff was paid minimum wage under Alaska wage and hour law for all hours worked.

75.     Plaintiff was reimbursed on a per delivery basis of $1.50.

76.     Defendants' reimbursement policy resulted in Plaintiff usually receiving approximately $.25 per mile ($1.50 per delivery/6 average miles per delivery).

77.     Plaintiff was required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

78.     Plaintiff was required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cell phone service, GPS service, automobile financing, and other equipment necessary for delivery drivers to complete their job duties.

79.     Plaintiff had purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, automobile financing, and incur cell phone and data charges all for the primary benefit of Defendants.

80.     Defendants did not track the actual expenses incurred by Plaintiff.

81.     Defendants did not reimburse Plaintiff based on his actual delivery-related expenses.

82.     Plaintiff was not reimbursed at the IRS standard mileage rate for the miles he drove while completing deliveries.

83. Defendants did not reasonably approximate the expenses incurred by Plaintiff while he completed deliveries for Defendants.

84. During Plaintiff's employment with Defendants, Defendants failed to adequately reimburse Plaintiff for automobile and other job-related expenses.

85. Plaintiff regularly made approximately 2 deliveries per hour during the hours he worked as a delivery driver.

86. Plaintiff regularly drove approximately 6 miles per delivery.

87. In 2019, for example, the IRS business mileage reimbursement is $.58 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. When paid at a per delivery basis of $1.50, Plaintiff receives approximately $.25 per mile ($1.50 / 6 miles). Using the 2019 IRS standard business mileage rate as a reasonable approximation of his expenses, Defendants' policy under-reimbursed Plaintiff by $.33 per mile ($.58-$.25). Considering Plaintiff's estimate of about 6 average miles per delivery, Defendants under-reimbursed him by about $1.98 per delivery ($.33 x 6 miles per delivery). Considering Plaintiff's estimate of approximately 2 deliveries per hour, Defendants under-reimbursed Plaintiff by about $3.96 per hour ($1.98 x 2 deliveries per hour).

88. By under-reimbursing Plaintiff by approximately $3.96 per hour, Plaintiff was paid below the minimum wage prescribed by the Fair Labor Standards Act. In particular, when Plaintiff earned $9.89 per hour but was under-reimbursed by $3.96 per

hour, Plaintiff earned only $5.93. Likewise, when Plaintiff earned $10.15 per hour but was under-reimbursed by $3.96 per hour, Plaintiff earned only $6.19 per hour.

89.     As a result of unreimbursed automobile expenses and other job-related expenses, Defendants have failed to pay Plaintiff minimum wage as required by law.

## Collective Action Allegations

90.     Plaintiff brings the First Count on behalf of himself and all similarly situated current and former delivery drivers employed at the Defendants' Domino's stores owned, operated, and controlled by Defendants nationwide, during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

91.     At all relevant times, Plaintiff and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiff and the FLSA Collective minimum wage for all hours worked and failing to reimburse delivery drivers for automobile expenses and other job-related expenses.  Plaintiff's claims are essentially the same as those of the FLSA Collective.

92.     Defendants' unlawful conduct is pursuant to a corporate policy or practice.

93.     Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked and to fully reimburse for "tools of the trade."

94.     Defendants' unlawful conduct has been widespread, repeated, and consistent.

95.     The First Count is properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

96.     The FLSA Collective members are readily identifiable and ascertainable.

97.     In recognition of the services Plaintiff has rendered and will continue to render to the FLSA Collective, Plaintiff will request payment of a service award upon resolution of this action.

## Class Action Allegations

98.     Plaintiff brings the Second, Third, and Fourth Counts under Federal Rule of Civil Procedure 23, on behalf of himself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants at the Defendants' Domino's stores in the State of Alaska between the date three years prior to the filing of the original complaint and the date of final judgment in this matter ("Rule 23 Class").

99.     Excluded from the Rule 23 Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

100.    The number and identity of the Rule 23 Class members are ascertainable from Defendants' records.

101. The hours assigned and worked, the positions held, deliveries completed, and the rates of pay and reimbursements paid for each Rule 23 Class Member are determinable from Defendants' records.

102. All of the records relevant to the claims of Rule 23 Class Members should be found in Defendants' records.

103. For the purpose of notice and other purposes related to this action, their names and contact information are readily available from Defendants.

104. Notice can be provided by means permissible under Rule 23.

105. The Rule 23 Class member are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

106. There are more than 50 Rule 23 Class members.

107. Plaintiff's claims are typical of those claims which could be alleged by any Rule 23 Class member, and the relief sought is typical of the relief which would be sought by each Rule 23 Class member in separate actions.

108. Plaintiff and the Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with Wisconsin wage law.

109. Plaintiff and the Rule 23 Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

110. Plaintiff is able to fairly and adequately protect the interests of the Rule 23 Class and has no interests antagonistic to the Rule 23 Class.

111.    Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

112.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

113.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

114.    Questions of fact and law common to the Rule 23 Class predominate over any questions affecting only individual members. The questions of law and fact common to the Rule 23 Class arising from Defendants' actions include, without limitation:

   a.    Whether Plaintiff and the Rule 23 Class members were subject to a common expense reimbursement policy that resulted in wages to drop below legally allowable minimum wage;

   b.    Whether Plaintiff and the Rule 23 Class were subject to a policy that required them to maintain and pay for safe, operable, and legally compliant automobiles to use in completing deliveries;

   c.    Whether Plaintiff and the Rule 23 Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

d.  Whether Defendants reimbursed Plaintiff and the Rule 23 Class members for their actual expenses;

e.  Whether Defendants reimbursed Plaintiff and the Rule 23 Class members at the IRS standard business mileage rate for the miles they drove in making deliveries;

f.  Whether Defendants properly reimbursed Plaintiff and the Rule 23 Class members;

g.  Whether Plaintiff and the Rule 23 Class were actually paid the wage rate they were promised by Defendants;

h.  Whether Defendants failed to pay Plaintiff and the Rule 23 Class in a timely manner as described by AS § 23.05.140; and

i.  The nature and extent of class-wide injury and the measure of damages for those injuries.

115.    In recognition of the services Plaintiff has rendered and will continue to render to the Rule 23 Class, Plaintiff will request payment of a service award upon resolution of this action.

## Causes of Action

### Count 1
### Failure to Pay Minimum Wages - Fair Labor Standards Act
### (On Behalf of Plaintiff and the FLSA Collective)

116.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

117.    Plaintiff and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

118.     Defendants paid Plaintiff and the FLSA Collective at or close to minimum wage for all hours worked.

119.     Defendants required and continue to require Plaintiff and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket, and failed to properly reimburse Plaintiff and the FLSA Collective for said expenses.

120.     Defendants' delivery reimbursement rate failed to properly reimburse Plaintiff and the FLSA Collective for automobile expenses and other job-related expenses out of pocket, and as a result, caused Plaintiff's and the FLSA Collective's wages to fall below minimum wage.

121.     By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA Collective.

122.     Plaintiff and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

123.     As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

**Count 2**
**Failure to Pay Minimum Wages - AS § 23.10.065**
**(On Behalf of Plaintiff and the Rule 23 Class)**

124.     Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

125.    Defendants paid Plaintiff and the Rule 23 Class below minimum wage for the hours they worked by requiring them to cover automobile expenses and other job-related expenses.

126.    Defendants ostensibly paid Plaintiff and the Rule 23 Class at or close to minimum wage for the hours they worked.

127.    Because Defendants required Plaintiff and the Rule 23 Class to pay for automobile expenses and other job-related expenses out of pocket, Defendants failed pay Plaintiff and the Rule 23 Class minimum wage.

128.    By not paying Plaintiff and the Rule 23 Class at least minimum wage for each hour worked, Defendants has violated the AS § 23.10.065.

129.    As a result of Defendants' violations, Plaintiff and the Rule 23 Class are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, attorneys' fees and costs as stated in AS § 23.10.110.

**Count 3**
**Untimely Payment of Wages – AS § 23.05.140**
**(On Behalf of Plaintiff and the Rule 23 Class)**

130.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

131.    During all relevant times, Defendants were covered by AS § 23.05.140, and Plaintiff and the Rule 23 Class were employees within the meaning of AS § 23.05.140 and were not exempt from its protections.

132. AS § 23.05.140(a) requires that Defendants pay Plaintiff and the Rule 23 Class all wages on a monthly or semi-monthly pay period.

133. By failing to pay Plaintiff and the Rule 23 Class all wages due to them under the FLSA and Alaska Wage and Hour Act, Defendants have also violated the AS § 23.05.140.

134. Plaintiff and the Rule 23 Class's unpaid wages and unreimbursed expenses have remained unpaid for more than thirty (30) days beyond their regularly scheduled payday.

135. Plaintiff's and the Rule 23 Class's entitlement to the wages sought herein is and has been undisputed.

136. In violating Alaska law, Defendants acted willfully, without a good faith basis and with reckless disregard to Alaska law.

137. As a result of Defendants' willful violation, Plaintiff and the Rule 23 Class are entitled to unpaid wages, unreimbursed expenses, liquidated damages, attorneys' fees and costs as stated in AS § 23.10.110.

**Count 4**
**(Unjust Enrichment)**
**(On behalf of Plaintiff and the Rule 23 Class)**

138. Plaintiff and the Rule 23 Class at Defendants' stores conferred a benefit on Defendants by using their own cars to work for Defendants.

139. The benefits include money saved on labor costs, additional sales by virtue of lower pizza prices, higher profits, and higher value for stores.

140.    Defendants are aware of and have accepted the benefit conferred on them Plaintiff and the Rule 23 Class.

141.    It would be unjust for Defendants to be permitted to retain the benefit conferred on them by Plaintiff and the Rule 23 Class without commensurate compensation.

142.    Plaintiff and the Rule 23 Class are entitled to equitable restitution of all unreimbursed expenses.

**WHEREFORE**, Plaintiff Cody Siegmann prays for the following relief:

A.    Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiffs and their counsel to represent the collective action members.

B.    Unpaid minimum wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations for Plaintiffs and the FLSA Collective.

C.    Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

D.    Designation of Plaintiff as representative of the Rule 23 Class and counsel of record as Class Counsel.

E.    A declaratory judgment that the practices complained of herein are unlawful under the Alaska Wage and Hour Act, AS § 23.10.065, and AS § 23.05.140.

F.     An award of unpaid wages, unlawful deductions, and withheld wages due under the Alaska Wage and Hour Act, AS § 23.10.065, and AS § 23.05.140.

G.     An award of liquidated damages under AS § 23.10.110.

H.     An award of prejudgment and post-judgment interest.

I.     An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

J.     Such other legal and equitable relief as the Court deems appropriate.


Respectfully submitted,

*/s/Sara L. Bloom*
Sara L. Bloom Alaska Bar No. 1509071
1120 Huffman Rd. Ste 24-785
Anchorage, AK 99515
t(907) 519-3613
f(907) 345-8570
*sara@907lawyer.com*

*/s/Phil Krzeski*
Andrew R. Biller (admission application forthcoming)
Biller & Kimble, LLC
4200 Regent Street, Suite 200
Columbus, OH 43219
Telephone: (614) 604-8759
Facsimile: (614) 340-4620
*abiller@billerkimble.com*

Andrew P. Kimble (admission application forthcoming)
Philip J. Krzeski (admission application forthcoming)
Biller & Kimble, LLC
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236

Telephone: (513) 715-8711
Facsimile: (614) 340-4620
*akimble@billerkimble.com*
*pkrzeski@billerkimble.com*

www.billerkimble.com

*Counsel for Plaintiff and the putative class*